(No. 82-CC-2390

H & H PLUMBING, HEATING AND ELECTRIC Co., a corporation, Claimant, *v.* THE STATE OF ILLINOIS, CAPITAL DEVELOPMENT BOARD, Respondent.

*Opinion filed September 21, 1984.*

DONALD G. MUSICK, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM G. WEBBER, Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This action arises out of the dispute between Claimant, a contracting firm, hereinafter referred to as

H & H, and the State of Illinois arising out of Claimant's bid and construction work on the Ziegler Elementary School.

H & H had submitted a bid to the Capital Development Board, hereinafter referred to as CDB, for construction work at the Ziegler Elementary School, which work included a sewage treatment plant facility. The bid submitted by H & H, which was approved and accepted by CDB, did not specify the amount of the bid necessarily attributable to that portion of the work pertaining to the sewage treatment plant facility.

Subsequently, no permit could be obtained from the Environmental Protection Agency for the sewage treatment plant facility and the contract for that portion of the work was not fulfilled by the CDB.

The dispute out of which this action arises developed between H & H and CDB. H & H claimed that out of their total bid, only $59,548 should be deducted. CDB, on the other hand, believed that the amount that should be deducted as a result of the cancellation of the sewage treatment plant facility was $87,466.93. One hundred dollars was tendered by Respondent, which tender was rejected by Claimant. Thereafter, the amount to be paid by CDB to H & H was in dispute in the sum of $28,018.93.

H & H brought suit against the State of Illinois for the sum of $28,018.93.

H & H's project manager estimator, William Hertenstein, testified that he was the project manager on the Ziegler School job. He was asked to make a calculation of the cost of constructing the sewer treatment plant had H & H proceeded to complete it in accordance with the original plans and specifications. Hertenstein had prepared the construction estimate for

the purpose of bidding the total job at the Ziegler School. The figures included a 15% charge for overhead and profit.

On cross-examination, Hertenstein testified that the estimate was prepared at a time when it had not been determined who was going to continue with the work. It was prepared at a time when an attempt was being made to determine what the costs were for that portion of the job that was not to be completed. Prior to the preparation of the estimate, an issue had arisen with respect to whether that portion of the work was going to be done but it had not been positively determined that H & H was not going to do that portion of the work. It was becoming apparent that EPA was not going to approve the sewage treatment plant so an alternate system was going to have to be installed and it was necessary to know how much the proposed system cost in relation to what another system would cost. The figures on his estimate were simply drawn from the original estimate that had originally been approved by the CDB. The cost of the sewage treatment plant from the supplier was verified in May of 1980 by letter from the supplier to H & H.

Hertenstein testified that the supplier responded to his request for a copy of the original quote and advised that the original quote was $43,263, thereby confirming their original quote.

Therefore, the dispute between the parties revolves about the cost of the sewage treatment plant which had to be deducted from the total competitive bid of H & H since it was never installed. H & H takes the position that the sewage treatment plant, as bid by them, would only have cost $43,263, and that it is the amount which should have been deducted from their competitive bid as a

result of the failure to construct the sewage treatment plant; Respondent, on the other hand, maintained that the amount that should have been deducted from the competitive bid as a result of the non-completion of the sewage treatment plant was $87,466.93. Respondent could not simply draw the figures from the original estimate or bid since the bid figures were "total price" and were not broken down so that the cost of the sewage treatment plant could be readily ascertainable therefrom.

In short, Claimant seeks to establish the correctness of its position through the testimony of Hertenstein, who prepared the original bids and who testified unequivocably that the cost of the plant was approximately $43,000.00. The State seeks to establish that the cost of the plant was $87,500 based on figures extrapolated from copies of letters addressed by Hertenstein to CDB and the architects on the job, which can be interpreted as suggesting that the price of the sewage treatment plant was considerably more than $43,000.00. Hertenstein explains these discrepancies by pointing out that the figures in those letters represent figures obtained by him from manufacturers of sewage treatment plants with respect to anticipated price increases. For example, in one letter Hertenstein warns about a possible price increase of sewage treatment plants in the area of 7 to 12%. In a subsequent letter, he warns that the price increase threatened by the manufacturers of sewage treatment plants could be as much as $8,750.00. From this, the State reasons that the cost of the original plant must have been $87,500, since a price increase of 10% totaling $8,750 would have, of necessity, been figured on an original price of $87,500.00.

Hertenstein stated that the figures used by him in his letter of warning to the CDB and the architect,

regarding the need to decide whether EPA approval could or could not be obtained on the original sewage treatment plant proposal, came from third-party sources in the manufacturing and sales end of the sewage treatment plant business. Therefore, Hertenstein says that such figures need not necessarily reconcile with his figures utilized in the preparation of H & H Plumbing's bid for the Ziegler School contract. Furthermore, there is evidence in the record that the sellers of the sewage treatment facility bid under H & H Plumbing's original proposal reconfirmed that the price for such sewage treatment facilities was, at the time the job was bid, in the area of $43,000.00.

Respondent does not in any way dispute Claimant's entitlement to be paid for lost profit as a result of the fact that the sewage treatment facility did not receive EPA approval and could not be installed. Respondent's sole contention is that Claimant has not deducted enough money from the bid for the cost of the sewage treatment facility. Respondent adduced no testimony as to the actual cost of the sewage treatment facility but seeks to establish such position solely on the basis of incongruities and discrepancies in assertions made by agents of H & H in correspondence concerning a need to expedite the decision on whether or not the facility was to be installed. Claimant, on the other hand, has produced direct evidence of the figures used in the original bid, which when deducted from the amount of the original bid show that Claimant is entitled to a sum of $28,018.93. Claimant has met its burden of proof.

It is therefore ordered that Claimant be awarded twenty-eight thousand eighteen and 93/100 dollars ($28,018.93) in full satisfaction of this claim.